**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case Nos. 2:18-ML-02814-AB 2:17-cv-06654-AB-FFM |
| | Assigned to Hon. André Birotte Jr. Courtroom:7B |
| **THIS DOCUMENT RELATES ONLY TO:** | **[~~PROPOSED~~] JOINT FINAL PRETRIAL CONFERENCE ORDER** |
| *Rodolfo Mejia v. Ford Motor Company,* 2:17-cv-06654-AB-FFM | **JURY TRIAL DATE: November 15, 2022, 8:30 a.m.** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

1.   THE PARTIES AND PLEADINGS ............................................................. 3

2.   JURISDICTION ...................................................................................... 3

3.   TRIAL DURATION ................................................................................. 4

4.   JURY TRIAL ........................................................................................... 4

5.   ADMITTED FACTS ................................................................................ 5

6.   STIPULATED FACTS ............................................................................. 5

7.   PARTIES' CLAIMS AND DEFENSES .................................................... 5

8.   REMAINING TRIABLE ISSUES ........................................................... 20

9.   DISCOVERY ........................................................................................ 21

10.  DISCLOSURES AND EXHIBIT LIST .................................................... 21

11.  WITNESS LISTS .................................................................................. 22

12.  MOTIONS IN LIMINE .......................................................................... 22

13.  BIFURCATION .................................................................................... 22

14.  ADMISSIONS ...................................................................................... 23

2

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

1. **THE PARTIES AND PLEADINGS**

*Plaintiff's Statement*

a.    ***Parties*:** The parties are Plaintiff Rodolfo Mejia ("Plaintiff") and Defendant Ford Motor Company ("Defendant" or "Ford"). Each of these parties have been served and appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

b.    ***Pleadings*:** The pleadings which raise the issues are Plaintiff's Complaint filed in the Superior State Court, Los Angeles County Court on August 4, 2017 and Ford's Answer filed on September 7, 2017. Plaintiff's 3rd through 5th causes of actions for fraudulent inducement have been dismissed. Plaintiff's remaining claims are causes of action for breaches of express and implied warranties under the Song-Beverly Act.

*Ford's Statement*

Plaintiff Rodolfo Mejia's claims in this action arise out of the purchase of a new 2013 Ford Fiesta on September 14, 2013. *See* Compl. [*Mejia* Dkt. 1-2, ¶ 70]. Plaintiff initially alleged claims for breach of express and implied warranty under the Song-Beverly Act and claims for fraudulent inducement. *See generally* Compl. [*Mejia* Dkt. 1-2].

On January 20, 2022, the parties submitted a joint stipulation to dismiss the fraud claims from Plaintiff's Complaint. *See* Joint Stipulation to Dismiss Fraud Claims [*Mejia* Dkt. 28]. The Court granted the parties' joint stipulation on January 21, 2022, and dismissed Plaintiff's claims for fraudulent concealment, intentional misrepresentation, and negligent misrepresentation. *See* Order Granting Dkt. 28 [*Mejia* Dkt. 29].

2. **JURISDICTION**

*Plaintiff's Statement*

3

As to this case, there has been no determination that subject matter jurisdiction over this specific action exists under 28 U.S.C. § 1332, nor has there been a determination venue is proper in this District and this Division pursuant to 28 U.S.C. § 1407 over this specific action. Plaintiff reserves the right to challenge jurisdiction at any time before final judgment if it appears this Court lacks jurisdiction. *Kelton Arms Condominium Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003); *Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc.* 756 F.3d 327, 337-340 (5th Cir. 2014).

*Ford's Statement*

As to this case, there has been a determination that subject matter jurisdiction over this action exists under 28 U.S.C. § 1332, and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1407, and pursuant to Transfer Order of the United States Judicial Panel on Multi-District Litigation creating Master Docket MDL 2:18-ml-02814-AB (FFMx), *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, filed 2/6/2018. [MDL Dkt. 1.]

3. **TRIAL DATE and DURATION**

The Jury Trial is hereby set for Tuesday, November 15, 2022, at 8:30 a.m. Each side may have 6 hours for presentation of their cases, excluding openings and closings. Each side may have 15 minutes for opening statements and 30 minutes for closing arguments. Plaintiff may have 10 minutes for rebuttal.

4. **JURY TRIAL**

*Plaintiff's Statement*

The trial is to be a jury trial as to any issues that may be tried to jury.

The parties have met and conferred and have filed a joint list of agreed upon instructions and disputed instructions.

*Ford's Statement*

The trial is to be a jury trial as to any issues that may be tried to a jury.

Ford reserves the right to seek a trial by the Court if Plaintiff is permitted to

4

1  pursue any equitable claims, including rescission and, if necessary, to resolve Ford's
2  equitable defense of recoupment or offset.

3      The parties have met and conferred and will file a joint set of agreed-upon
4  instructions and verdict forms.

5  5.   **ADMITTED FACTS**

6      The following facts are admitted and require no proof:

7      1) Ford Motor Company is a manufacturer of 2011–2016 Ford Fiesta and
8         2012–2016 Ford Focus vehicles.

9      2) Plaintiff purchased a new 2013 Ford Fiesta passenger vehicle that was
10        manufactured by Ford and equipped with a DPS6 PowerShift
11        transmission, on September 14, 2013, from South Bay Ford in Hawthorne,
12        California.

13     3) Plaintiff's 2013 Fiesta was covered by an express written warranty issued
14        by Ford.

15     4)  South Bay Ford is an authorized Ford repair facility.

16     5) Ford introduced the DPS6 PowerShift Transmission in its Fiesta and
17        Focus vehicles for the 2011 and 2012 model years, respectively.

18  6.   **STIPULATED FACTS**

19     The following facts, though stipulated, shall be without prejudice to any
20  evidentiary objection: None.

21  7.   **PARTIES' CLAIMS AND DEFENSES**

22     The parties have set forth their respective positions as to the claims and
23  defenses below.

24     *Plaintiff's Statement*

25  **Plaintiff's Claims:**

26     **(a)      Plaintiff plans to pursue the following claims against Defendant:**

27  **Claim 1:** For violation of the Song-Beverly Consumer Warranty Act,
28  California Civil Code § 1790 et seq., express warranty, Plaintiff asserts that Ford

was unable to repair the Subject Vehicle to conform to its express warranty within a reasonable number of attempts, that the defects resulted in a substantial impairment to use, value and safety, that Ford failed to promptly replace or make restitution for the Subject Vehicle, and further that Ford's failure to comply was willful.

**Claim 2:** For violation of the Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq., implied warranty, Plaintiff asserts that the Subject Vehicle was not of the same quality as those generally acceptable in the trade and/or was not fit for the ordinary purposes for which it is used, that Plaintiff was harmed, and Ford's breach of the implied warranty was a substantial factor in causing Plaintiff's harm.

**Claim 3**: This claim has been dismissed. It will not be further addressed herein.

**Claim 4**: This claim has been dismissed. It will not be further addressed herein.

**Claim 5**: This claim has been dismissed. It will not be further addressed herein.

**(b)**    **The elements required to establish Plaintiff's claims:**

**Claim 1:**    Breach of Express Warranty – Violation of Song-Beverly Act

a.    That Plaintiff purchased a new motor vehicle manufactured and/or distributed by Ford;

b.    That Ford gave Plaintiff a written warranty;

c.    That the Subject Vehicle had one or more defects covered by the warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's situation;

d.    That Plaintiff delivered the Subject Vehicle to Ford's authorized repair facilities for repair of the defect(s);

e.    That Ford or its authorized repair facility failed to repair the Subject Vehicle to match the written warranty after a reasonable number of

JOINT FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:17-cv-06654 (MEJIA)4096" = "1" "4844-5500-7917 v2" ""

1    opportunities to do so; and

2              f.      That Ford did not promptly replace or make restitution for the

3    Subject Vehicle.

4              g.      Further, Ford's failure to promptly replace or make restitution

5    was willful.

6    Judicial Council of California Civil Jury Instructions (CACI) 3201. It is not

7    necessary for Plaintiff to prove the cause of the defect or defects in the Subject

8    Vehicle. *Id.*

9         If the jury decides that Defendant or its authorized repair facility failed to

10   repair the defect(s) after a reasonable number of opportunities, then Plaintiff is

11   entitled to recover the amounts they prove they paid for the Subject Vehicle,

12   including:

13        1.      The amount paid to date for the Subject Vehicle, including
14                finance charges and any amount still owed by Plaintiff;

15        2.      Charges for transportation and manufacturer-installed options;
16                and

17        3.      Sales tax, use tax, license fees, registration fees, and other official
18                fees.

19   CACI 3241. Plaintiff's recovery must be reduced by the value of the use of the

20   Subject Vehicle before it was brought in for repair. CACI 3241. Defendant must

21   prove how many miles it was driven between the time when Plaintiff took

22   possession of it and the time when Plaintiff first delivered it to Defendant or its

23   authorized repair facility to fix the defect. *Id*. The jury will then multiply this

24   mileage number by the purchase price, including any charges for transportation and

25   manufacturer-installed options, and divide that amount by 120,000 and then deduct

26   the resulting amount from Plaintiffs' recovery. CACI 3241.  Plaintiff also seeks and

27   are entitled to recovery incidental and consequential damages, including but not

28   limited to costs for repairs and service, registration and insurance. See CACI 3242,

3243.

Plaintiff also claims that Defendant's failure to repurchase or replace the Subject Vehicle after a reasonable number of opportunities was willful and therefore asks that the jury impose a civil penalty against Defendant. CACI 3244. A civil penalty is an award of money in addition to a plaintiff's damages. *Id*.  The purpose of this civil penalty is to punish a defendant or discourage it from committing violations in the future. *Id.* "Willful" means that Defendant knew of its legal obligations and intentionally declined to follow them. *Id*. However, a violation is not willful if the jury finds that Defendant reasonably and in good faith believed that the facts did not require repurchasing or replacing the Subject Vehicle. *Id*.

If Plaintiff's have proved that Defendant's failure was willful, the jury may impose a civil penalty against it. *Id*. The penalty may be in any amount the jury finds appropriate, up to a maximum of two (2) times the amount of Plaintiff's actual damages.

**Claim 2:**     <u>Breach of Implied Warranty – Violation of Song-Beverly Act</u>

      a.     That Plaintiff bought the Subject Vehicle manufactured by Ford;

      b.     That at the time of purchase Ford was in the business of manufacturing automobiles, such as the Subject Vehicle;

      c.     That the Subject was not of the same quality as those generally acceptable in the trade or was not fit for the ordinary purposes for which the goods are used;

      d.     That Plaintiff was harmed; and

      e.     That Ford's breach of the implied warranty was a substantial factor in causing Plaintiff's harm.

CACI 3210. "[T]here exists in every contract for the sale of goods by a merchant a warranty that the goods shall be merchantable."  *Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 26–27. The implied warranty of merchantability "provides for a minimum level of quality.'" *American Suzuki Motor Corp. v.*

JOINT FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:17-cv-06654 (MEJIA)4096" = "1" "4844-5500-7917 v2" ""

*Superior Court* (1995) 37 Cal.App.4th 1291, 1295–96. A claim for breach of the implied warranty of merchantability incorporates the provisions of the California Uniform Commercial Code but it is broader and supplements it with less stringent elements of proof and more expansive remedies. CACI 3210, Sources and Authorities.  "The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." *Mexia v. Rinker Boat Co., Inc*. (2009) 174 Cal.App.4th 1297, 1304–05.

In the Directions for Use that accompany CACI 3210, the jury instruction regarding the breach of implied warranty claim under the Song-Beverly Consumer Warranty Act, there is a reference to Cal. Comm. Code § 2714, regarding what damages a consumer may recover in connection with the claim. Section 2714 provides that: (1) a buyer may recover all damages resulting from the seller's breach of the implied warranty which are reasonable; (2) damages equating to the difference at the time of sale between the value of the vehicle accepted and the value it would have had if it had been as warranted; and (3) incidental and consequential damages.  Cal. Comm. Code § 2714(1)-(3); see also Cal. Civ. Code § 1794(a).

**(c)    Brief Summary of Key Evidence Plaintiff Relies on for Each Claim:**

**Claim 1:**  Violation of Express Warranty Provisions of Song-Beverly Act

a.   That Plaintiff purchased a new motor vehicle manufactured and/or distributed by Ford;

This is a stipulated fact.

b.   That Ford gave Plaintiff a written warranty;

This is a stipulated fact.

c.   That the Subject Vehicle had one or more defects covered by the warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's  situation;

9

1.     Plaintiff's testimony, the testimony of Plaintiff's wife Cynthia Hernandez, Plaintiff's expert Anthony Micale, testimony of Ford's corporate designee(s), testimony of South Bay Ford personnel and engineering and management employees of Ford, such as Shawn McClain, Gary Nichols and Greg Overla; and documentary evidence including service and repair records, Ford's Technical Service Bulletins ("TSBs"), Ford's internal presentations and reports, and written communications by and between Ford's engineering and management employees, establish that the Subject Vehicle had one or more defects covered by the warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's situation.

d.   That Plaintiff delivered the Subject Vehicle to FORD's authorized repair facilities for repair of the defect(s);

1.     It is a stipulated fact that South Bay Ford is a FORD authorized repair facility.

2.     Plaintiff's testimony, testimony of Plaintiff's wife Cynthia Hernandez the testimony of Plaintiff's expert Anthony Micale, testimony of Ford's corporate designee(s), testimony of South Bay Ford personnel and engineering and management employees of Ford, such as Shawn McClain, Gary Nichols and Greg Overla; and documentary evidence including service and repair records, establish that Plaintiff delivered the Subject Vehicle to South Bay Ford for repair of the defects under warranty.

e.   That Ford or its authorized repair facility failed to repair the Subject Vehicle to match the written warranty after a reasonable number of opportunities to do so; and

1.     It is a stipulated fact that South Bay Ford is a FORD authorized repair facility.

2.      Plaintiff's testimony, the testimony of Plaintiff's wife Cynthia Hernandez, Plaintiff's expert Anthony Micale, testimony of Ford's corporate designee(s), testimony of South Bay Ford personnel and engineering and management employees of Ford, such as Shawn McClain, Gary Nichols and Greg Overla; and documentary evidence including service and repair records, Ford's Technical Service Bulletins ("TSBs"), Ford's internal presentations and reports, and written communications by and between Ford's engineering and management employees, establish that Ford and its authorized repair facility, South Bay Ford, failed to repair the Subject Vehicle to match the written warranty after a reasonable number of opportunities to do so.

f.   That Ford did not promptly replace or make restitution for the Subject Vehicle.

1.      Plaintiff's testimony, testimony of Ford's corporate designee(s), and documentary evidence including contact records and correspondence between Plaintiff and Ford Motor Company's customer service agents, internal customer service records including the FMC 360, establish that Ford did not promptly replace or make any restitution for the Subject Vehicle.

g.   That Ford's failure to replace or make restitution for the Subject Vehicle was willful.

1.   Plaintiff's  testimony, the testimony of Ford Motor Company's corporate designee(s) and other employees including but not limited to Shawn McClain, Gary Nichols and Greg Overla,, and documentary evidence including correspondence between Plaintiff and Ford Motor Company's customer service agents, internal customer service records including the FMC 360, extensive documentary evidence including Ford's Technical Service Bulletins ("TSBs"),

1  internal records, reports, presentations, and written communications by

2  and between Ford's engineering and management employees, and

3  documentation of Ford's policies and procedures for its agents'

4  handling of evaluations of eligibility of vehicles for relief under

5  California law, establish that Ford failed to review reasonably

6  available information germane to the decision whether to repurchase or

7  replace the Subject Vehicle, and that Ford's failure to comply was

8  willful.

9  **Claim 2:**  <u>Violation of Implied Warranty Provisions of Song-Beverly Act</u>

10      a.    That Plaintiff bought the Subject Vehicle manufactured by Ford;

11          <u>This is a stipulated fact</u>.

12      b.    That at the time of purchase Ford was in the business of

13      manufacturing automobiles, such as the Subject Vehicle;

14          <u>This is a stipulated fact</u>.

15      c.    That the Subject was not of the same quality as those generally

16      acceptable in the trade or was not fit for the ordinary purposes for

17      which the goods are used;

18          1.    Plaintiff's testimony, the testimony of Plaintiff's wife

19          Cynthia Hernandez, Plaintiff's expert Anthony Micale,

20          testimony of Ford's corporate designee(s), testimony of South

21          Bay Ford personnel and engineering and management

22          employees of Ford, such as Shawn McClain, Gary Nichols and

23          Greg Overla; and documentary evidence including service and

24          repair records, Ford's Technical Service Bulletins ("TSBs"),

25          Ford's internal presentations and reports, and written

26          communications by and between Ford's engineering and

27          management employees.

28      d.    That Plaintiff was harmed; and

1          1. Plaintiff's testimony, the testimony of Plaintiff's wife

2          Cynthia Hernandez, Plaintiff's expert Anthony Micale,

3          testimony of Ford's corporate designee(s), testimony of South

4          Bay Ford personnel and engineering and management

5          employees of Ford, such as Shawn McClain, Gary Nichols and

6          Greg Overla; and documentary evidence including service and

7          repair records, Ford's Technical Service Bulletins ("TSBs"),

8          Ford's internal presentations and reports, and written

9          communications by and between Ford's engineering and

10         management employees.

11    e.    That Ford's breach of the implied warranty was a substantial

12    factor in causing Plaintiff's harm.

13         1. Plaintiff's testimony, the testimony of Plaintiff's wife

14         Cynthia Hernandez, Plaintiff's expert Anthony Micale,

15         testimony of Ford's corporate designee(s), testimony of South

16         Bay Ford personnel and engineering and management

17         employees of Ford, such as Shawn McClain, Gary Nichols and

18         Greg Overla; and documentary evidence including service and

19         repair records, Ford's Technical Service Bulletins ("TSBs"),

20         Ford's internal presentations and reports, and written

21         communications by and between Ford's engineering and

22         management employees.

23

24

25    *Ford's Statement*

26    **A.    Summary of Plaintiff's Claims and Elements Required to Establish**

27    **Plaintiff's Claims**

28    As set forth in Section 1, *supra*, the only remaining claims in this action are

13

1    for alleged violations of the Song-Beverly Warranty Act—i.e., breach of the express

2    and implied warranties.

3       For the first claim for breach of express warranty, Plaintiff's complaint sought

4    the following: 1) "reimbursement of the price paid for the vehicle less that amount

5    directly attributable to use by the Plaintiff prior to discovery of the nonconformities;"

6    2) "all incidental, consequential, and general damages resulting from Defendant's

7    failure to comply with their obligations under the Song-Beverly Act;" 3) "the

8    aggregate amount of costs and expenses, including attorney's fees, reasonably

9    incurred in connection with the commencement and prosecution of this action;" and

10    4) "a civil penalty of up to two times the amount of actual damages." Compl. at ¶¶

11    119–122.

12       For the second claim for breach of implied warranty, Plaintiff's complaint

13    sought the following: 1) "replacement or reimbursement pursuant to Civil Code

14    section 1794, *et seq.*;" 2) rescission of the contract pursuant to Civil Code section

15    1794, *et seq.* and Commercial Code section 2711;" 3) "any 'cover' damages under

16    Commercial Code sections 2711, 2712, and Civil Code section 1794, *et seq.*;" and 4)

17    "all incidental and consequential damages pursuant to 1794 *et seq* [sic] and

18    Commercial Code sections 2711, 2712, and 2713 *et seq.*"

19    **Claim 1: Breach of Express Warranty – Violation of the Song-Beverly Act**

20      <u>Summary</u>: Plaintiff claims Ford failed to offer to promptly replace Ford Fiesta

21    or refund his purchase after being unable to repair the Fiesta within a reasonable

22    number of warranted repair opportunities.

23      <u>Elements</u>: Plaintiff has the burden of proving:

24       1.  That he purchased a new motor vehicle manufactured by Ford;

25       2.  That Ford gave Plaintiff a written warranty that Ford would repair or

26    replace parts that malfunctioned, or failed during normal use within the coverage

27    period because of defects in factory-supplied materials or factory workmanship;

28       3. That the vehicle failed to conform to the warranty, and the defect

14

would have substantially impaired the vehicle's use, or safety to a reasonable person in Plaintiff's situation;

4. That after discovering the defect, Plaintiff delivered the vehicle to Ford or its authorized repair facility for repair of the defect;

5. That Ford or its authorized repair facility was unable to repair the defect after a reasonable number of opportunities to do so; and

6. That Ford did not promptly offer to replace the vehicle or refund Plaintiff's money.

Sources:

- Judicial Council of California Civil Jury Instructions (CACI) 3201(modified), Failure to Promptly Repurchase or Replace New Motor Vehicle After Reasonable Number of Repair Opportunities—Essential Factual Elements.

- Cal. Civil Code § 1793.2, subds. (d) & (e) (referring to conformity or nonconformity with applicable express warranties, rather than "defects"); *see Oregel v. Am. Izuzu Motors, Inc.,* 90 Cal. App. 4th 1094, 1101 (2001) (using "nonconformity").

- "Every vehicle with a defect is not necessarily a lemon. A 'nonconformity' requiring the vehicle's refund or replacement under our law must 'substantially impair' the use, value, or safety of the new motor vehicle.'" (*Johnson v. Ford Motor Co*., 35 Cal.4th 1191, 1211 (1963).)

**Civil Penalties – Willful Violation of the Song-Beverly Act**

Summary: Plaintiff claims that Ford's failure to offer to promptly repurchase or replace the vehicle after a reasonable number of warranted repair opportunities, was willful, and therefore they are requesting an award of civil penalties.

Elements: Plaintiff has the burden of proving that:

1. All elements of Claim No. 1, *supra*;

2. Ford's conduct was "willful." "Willful" means that Ford knew of

15

1  its legal obligations and intentionally declined to follow them. However, a violation

2  is not willful if Ford reasonably and in good faith believed that the facts did not

3  require it to replace the vehicle or refund Plaintiff's purchase.

4          <u>Sources:</u>

5      • CACI 3244 (modified); Cal. Civ. Code § 1794(c).

6      • "Neither punishment nor deterrence is ordinarily called for if the

7  defendant's actions proceeded from an honest mistake or a sincere and reasonable

8  difference of factual evaluation.... [A] violation is not willful if the defendant's

9  failure to replace or refund was the result of a good faith and reasonable belief the

10 facts imposing the statutory obligation were not present." *Kwan v. Mercedes-Benz of*

11 *N. Am., Inc.*, 23 Cal. App. 4th 174, 184–85 (1994) (citations omitted).

12     • "'[U]nlike a simple equation of willfulness with volition, which

13 would render 'willful' virtually all cases of refusal to replace or refund, our

14 interpretation preserves the Act's distinction between willful and nonwillful

15 violations." *Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1051 (2010)

16 (quoting Kwan.)

17     • "In the present case, the excluded testimony regarding

18 Fleetwood's belief that it could readily repair the water-damaged trailer, including the

19 nature and details of those prospective repairs, would appear to be relevant to the

20 question of Fleetwood's good faith. [T]he evidence was relevant to Fleetwood's

21 belief that it had not yet been given a reasonable number of repair attempts. We

22 therefore agree with Fleetwood that the exclusion of this evidence on relevancy

23 grounds was error." *Robertson v. Fleetwood Travel Trailers of Cal., Inc*., 144 Cal.

24 App. 4th 785, 815 (2006).

25     • *Islas, et al. v. Ford Motor Co*., Case No. 5:18-cv-02221-GW-

26 (SPx), Amended Order adopting tentative ruling on Motion to Dismiss and Motion

27 for Summary Judgment (Dkt. No. 52 [Amended Minute Order], filed Oct. 17, 2019,

28 and Dkt. 38 [Tentative Ruling], filed 9/9/2019), holding that *Lukather* does not stand

for the proposition that a manufacturer has an "affirmative duty" under the Song-Beverly Act. "If anything, *Lukather* indicates that a manufacturer's duty to promptly make restitution was only trigger[ed] after a buyer sufficiently informs a manufacturer that he or she desires one or more of the options available to him or her under Section 1793.2(d)(2)." Plaintiff may not recover civil penalties if he proves only a breach of implied warranty. Cal. Civ. Code § 1794(c).

**Claim 2: Breach of Implied Warranty – Violation of the Song-Beverly Act**

<u>Summary</u>: Plaintiff claims that Ford breached the implied warranty of implied warranty of merchantability under the Song-Beverly Act.

<u>Elements</u>: Plaintiff has the burden of proving:

1. That Plaintiff bought a vehicle manufactured by Ford;

2. That at the time of purchase, Ford was in the business of manufacturing vehicles;

3. That at the time of purchase and for a period of one year following the purchase, the 2013 Ford Fiesta was not fit for its ordinary purposes.

4. That the vehicle's defect within the first year of ownership substantially impaired its value to Plaintiff;

5. That Plaintiff accepted the vehicle on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or that he accepted it without discovery of the nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

6. That Plaintiff gave notice that he justifiably revoked his acceptance:

    a.    within a reasonable time after he discovered or should have discovered the reason for revoking; and

    b.    before any substantial change in condition of the 2013 Fiesta which was not caused by its own defects.

6. The amount of damages to which Plaintiff is entitled.

17

Sources:

- Judicial Council of California Civil Jury Instructions (CACI) 3210;
- Buyer's Action for Breach of Implied Warranties. Civil Code section 1794(a).
- Damages of Implied Warranties. Civil Code section 1791.1(c).
- Remedies. Civil Code section 1791.1(d).
- Implied Warranty of Merchantability. Civil Code section 1792.
- Damages for Breach; Accepted Goods. California Uniform Commercial Code section 2714.
- "As defined in the Song-Beverly Consumer Warranty Act, 'an implied warranty of merchantability guarantees that 'consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.' Unlike an express warranty, 'the implied warranty of merchantability arises by operation of law' and 'provides for a minimum level of quality.' 'The California Uniform Commercial Code separates implied warranties into two categories. An implied warranty that the goods "shall be merchantable" and "fit for the ordinary purposes" is contained in California Uniform Commercial Code section 2314. Whereas an implied warranty that the goods shall be fit for a particular purpose is contained in section 2315. Thus, there exists in every contract for the sale of goods by a merchant a warranty that the goods shall be merchantable. The core test of merchantability is fitness for the ordinary purpose for which such goods are used. (§ 2314.)' " (*Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26–27 (2007) (internal citations omitted).)
- "Here the alleged wrongdoing is a breach of the implied warranty of merchantability imposed by the Song-Beverly Consumer Warranty Act. Under the circumstances of this case, which involves the sale of a used automobile, the element

18

of wrongdoing is established by pleading and proving (1) the plaintiff bought a used automobile from the defendant, (2) at the time of purchase, the defendant was in the business of selling automobiles to retail buyers, (3) the defendant made express warranties with respect to the used automobile, and (4) the automobile was not fit for ordinary purposes for which the goods are used. Generally, '[t]he core test of merchantability is fitness for the ordinary purpose for which such goods are used.' " (*Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal.App.5th 1234, 1246 (2018), (internal citations omitted).)

- "[T]he buyer of consumer goods must plead he or she was injured or damaged by the alleged breach of the implied warranty of merchantability." (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1247.)

- The implied warranty of merchantability "does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.' " (*American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1295–96 (1995) (internal citation omitted).

- "The notice requirement of [former Civil Code] section 1769 . . . is not an appropriate one for the court to adopt in actions by injured consumers against manufacturers with whom they have not dealt. 'As between the immediate parties to the sale [the notice requirement] is a sound commercial rule, designed to protect the seller against unduly delayed claims for damages. As applied to personal injuries, and notice to a remote seller, it becomes a booby-trap for the unway.'" (*Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 61 (1963) (internal citations omitted).)

## B.   Brief Description of Key Evidence in Opposition to Plaintiff's Claims

Plaintiff is not entitled to the statutory presumption to assist them in proving a "reasonable number of attempts" took place. Repair orders establish that Mejia's vehicle did not have 3 or more repairs for the transmission during the first 18 months it was on the road. Plaintiff's first visit to a Ford authorized dealership for repair to

1  the Fiesta occurred in January 2014, more than a year after Plaintiff's purchase of his
2  vehicle. Plaintiff derived significant value from the Fiesta during his ownership and
3  there is no evidence of substantial impairment of use, safety, or any diminution in
4  value.

5        The following facts and evidence may be used to support Ford's defense to
6  Plaintiff's claims in this matter: Plaintiff's deposition testimony; Matthew Fyie's
7  deposition testimony; Robert Pascarella's deposition testimony; the date of purchase;
8  miles on the vehicle at the date of purchase; trade-in value of the vehicle; concerns
9  made to Ford-authorized independent repair dealers by Plaintiff; the dates the vehicle
10  was delivered to Ford-authorized independent repair dealers; the inspection, service,
11  or repairs performed by Ford authorized independent repair dealers; the dates the
12  vehicle was returned to Plaintiff; the mileage on the dates the vehicle was presented
13  to Ford-authorized independent repair dealers; the dates and substance of any
14  communications with Ford and/or Ford authorized independent repair dealers; the
15  sales file; repair orders; invoices; Warranty (and the terms of the warranty including
16  length, coverage and exclusions are set forth verbatim); Owner's Manual; AWS,
17  FMC 360, GCQIS, and Oasis documents. Ford's experts' reports and exhibits
18  thereto; and any other documents identified in the Joint Exhibit List.

19  1.    **REMAINING TRIABLE ISSUES**

20        In view of the admitted facts and the elements required to establish the claims
21  and affirmative defenses, the following to be tried:

22      *Plaintiff's Statement*

23      The following remain to be tried:

24      (1) Whether the Subject Vehicle contained one or more defects that
25  substantially impaired its use, value, or safety to a reasonable person in Plaintiff's
26  situation.

27

28

(2)     Whether Ford or its authorized repair facilities failed to repair the Subject Vehicle to conform to its written warranty after a reasonable number of opportunities to do so.

(3)     Whether the Subject Vehicle was not of the same quality as those generally acceptable in the trade or was not fit for the ordinary purposes for which it is used.

(4)     Whether Ford failed to promptly repurchase or replace the Subject Vehicle;

(5)     The amount of Plaintiff's damages under both theories of express and implied warranty claims.

(6)     Whether Ford's failure to comply was willful.

(7).    The amount of civil penalties.

*Ford's Statement*

(1)     To the extent not stipulated to, all elements of Plaintiff's cause of action for violation of the Song-Beverly Act for breach of express warranty;

(2)     To the extent not stipulated to, all elements of Plaintiff's cause of action for violation of the Song-Beverly Act for breach of implied warranty;

(3)     The amount of Plaintiff's restitution damages under the Song-Beverly Act;

(4)     Depending on the remedies Plaintiff seeks, the amount of any equitable relief or offsets (to be resolved by the Court);

(5)     The amount, if any, of civil penalties that may be justified for a willful breach.

2.   **DISCOVERY**

All discovery is complete.

3.   **DISCLOSURES AND EXHIBIT LIST**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties is to be filed under separate cover as required by L.R. 16-6.1 (the "Joint Exhibit List"), on August 5, 2022.  In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

4.   **WITNESS LISTS**

The Joint Witness List of the parties will be separately filed with the Court on August 5, 2022. Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

5.   **MOTIONS IN LIMINE**

Plaintiff's Motion *in Limine* and Defendant's Daubert motion will be heard on August 12, 2022. The parties have met and conferred on the motion *in limine*. The following motion *in limine*, and no others, are pending or contemplated:

Plaintiff's Motion *in Limine*:

- Motion in Limine No. 1 to Exclude Argument, Evidence or Testimony that Plaintiff's Damages Should be Offset Due to the Trade-In of the Subject Vehicle or, Alternatively, Request that Any Offset Due to the Trade-In be Determined Post-Verdict. See MIL No. 1, Dkt. No. 1266.

Defendant's Daubert Motion:

- Defendant Ford Motor Company's Motion to Exclude Opinions and Testimony of Anthony Micale

**BIFURCATION**

***Plaintiff's Statement:***

Bifurcation is not necessary.

***Ford's Statement***:

Ford will not seek bifurcation, except to the extent the Court permits Plaintiff to seek the equitable remedy of rescission on any claim (such as their implied warranty claim) that must instead be resolved by the Court. *See, e.g., Danjaq LLC*

1   *v. Sony Corp.*, 263 F.3d 942, 961-62 (9th Cir. 2001) (equitable claims and defenses

2   are to be resolved by the Court not a jury).

3

4   6.   **ADMISSIONS**

5        The foregoing having been made by the parties, and the parties having

6   specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order

7   shall supersede the pleadings, and govern the course of the trial of this cause, unless

8   modified to prevent manifest injustice.

9

10  DATED: September 29, 2022

11

12  _____

    HONORABLE ANDRÉ BIROTTE JR.
13  UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:17-cv-06654 (MEJIA)4096" = "1" "4844-5500-7917 v2" ""